IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Willie Mae Good,<br><br>        Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,[1]<br><br>        Defendant. | C/A No.: 1:12-3380-RMG-SVH<br><br>REPORT AND RECOMMENDATION |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.      Relevant Background

   A.      Procedural History

On May 6, 2008, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on September 15, 2007. Tr. at 189–204. Her applications were denied initially and upon reconsideration. Tr. at 121–24. On December 10, 2009, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Alice Jordan. Tr. at 87–119. The ALJ issued an unfavorable decision on April 8, 2010, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 128–35. Plaintiff filed additional applications for DIB and SSI on August 27, 2010, alleging that she had become unable to work on April 8, 2010. Tr. at 234–42. On March 11, 2011, the Appeals Council remanded the case to the ALJ for further review. Tr. at 145–47. The ALJ held a second hearing on July 7, 2011. Tr. at 826–59. On August 4, 2011, the ALJ issued a second unfavorable opinion, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 26–53. In her decision, the ALJ noted that she had associated Plaintiff's initial and subsequent claims and that the unfavorable opinion applied to all claims. Tr. at 26. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 28, 2012. [Entry #1].

B.      Plaintiff's Background and Medical History

1.      Background

Plaintiff was 45 years old at the time of the second hearing. Tr. at 830. She graduated from high school. Tr. at 92. Her past relevant work ("PRW") was as a cashier, packer, sewing machine operator, and babysitter. Tr. at 852. She alleges she has been unable to work since September 15, 2007. Tr. at 189.

2.      Medical History and Hearing Testimony

On September 24, 2007, Plaintiff underwent an anterior cervical discectomy, decompression, and fusion at C5–6 and C6–7. Tr. at 580–625. She alleges that she continues to have pain in her neck, back, hips, and knees. Tr. at 93. She also alleges impairments of diabetes, depression, asthma, poor circulation, fibromyalgia, hypertension, and side effects from her medications. Tr. at 100, 103–04, 106, 109, 112. Plaintiff's initial brief [Entry #17] and the ALJ's decision (Tr. at 26–53) both include detailed summaries of Plaintiff's medical records. The Commissioner's brief includes only the physician opinions relevant to Plaintiff's allegations of error [Entry #20 at 2–3]; thus, the undersigned concludes that the Commissioner does not dispute the medical history summary provided by Plaintiff. In addition, Plaintiff's allegations of error are discrete issues that do not require an exhaustive examination of the record. Neither party found the testimony provided at the two hearings to be relevant enough to the allegations of error to provide a detailed summary. Consequently, while the undersigned typically provides a detailed summary of Plaintiff's medical history and hearing testimony, such a summary is rendered superfluous in this case.

C.  The ALJ's Findings

In her decision of August 4, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
2. The claimant has not engaged in substantial gainful activity since September 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: diabetes mellitus, asthma, degenerative disc disease, fibromyalgia, anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, I find that the claimant has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following additional limitations: a need to change positions, never climbing ladders/ropes/scaffolds, occasional crawling and kneeling, frequently performing all other postural activities, occasional bilateral overhead reaching, a need to avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors and hazards, and a limitation to unskilled work.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on August 5, 1965 and was 42 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 29–53.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to properly evaluate the opinions of the treating and examining physicians; and

2)    the ALJ did not adequately consider the effect of Plaintiff's combined impairments.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

(discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

        2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    Combined Impairments

Plaintiff argues that the ALJ's failure to consider the combined effects of her impairments requires remand. [Entry #17 at 30–35]. The undersigned is constrained to agree.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th

8

Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments).  The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004).  The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In this case, the ALJ addressed Plaintiff's alleged impairments in her RFC assessment and identified functional limitations related to each impairment. Tr. at 38–39. Other than her conclusory statement that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," she made no findings regarding the combined effects of Plaintiff's impairments.

In responding to Plaintiff's argument on this issue, the Commissioner argues only that Plaintiff has not identified "any actual limitations accounted for by the ALJ." [Entry #20 at 11–12].  This is essentially a harmless error argument.  The Commissioner provides no legal support for a finding of harmless error in the context of the combined impairment analysis.

Historically, the District of South Carolina has found that the Fourth Circuit's *Walker* decision requires an explanation of the combined effect of a plaintiff's

impairments and in-turn consideration of the individual impairments like that provided by the ALJ in this case is insufficient. *See Saxon*, 662 F. Supp. 2d at 479. In *Walker*, the underlying ALJ decision included discussion of each of claimant's impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49–50. The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.*

Recently, courts in this District have been refining their interpretation of *Walker*. For example, in *Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792 (D.S.C. Aug. 28, 2012), Judge Harwell held that the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments. *Id.* at *6. In so finding, he noted that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner. *Id.* at *6. Judge Harwell ultimately concluded that the Commissioner's determination of the plaintiff's RFC, which included findings regarding the severity of each of the plaintiff's impairments, demonstrated that the Commissioner considered the impairments in combination. *Id.* at *7. Central to this conclusion was the following statement contained in the ALJ's decision: "After a thorough review of the evidence of the record, I find that the claimant's impairments of morbid obesity, depression and diabetic neuropathy do not have a negative effect upon the claimant's ability to perform routine movement beyond the light residual functional capacity. . . ." *Id.*

10

Similarly, in *Thornsberry v. Astrue*, C/A No. 4:08-475-HMH-TER, 2010 WL 146483 (D.S.C. Jan. 12, 2010), Judge Herlong found that "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments." *Id.* at *5. The ALJ's discussion of the plaintiff's ADLs incorporated the functional limitations imposed by multiple limitations. *Id.* The ALJ also noted that he was placing additional restrictions on the plaintiff's RFC "due to the combination of [the plaintiff's] severe impairments." *Id.* The court found that "[a]ny error on the part of the ALJ in failing to use explicit language [in considering the plaintiff's combined impairments] is harmless." *Id.*

While the foregoing cases suggest potential change related to the District's interpretation of *Walker*, their holdings do not save the ALJ's deficient analysis in this case. Unlike in *Brown* and *Thornsberry*, the ALJ in the present case included no findings regarding the combined effect of Plaintiff's physical and mental impairments, nor any findings *suggestive* of consideration of the combined impairments, other than the ALJ's generic declaration that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." Tr. at 18. Such a statement is insufficient under the prevailing case law. *See Walker*, 889 F.2d at 50 (holding that such a "finding in itself, however, is not sufficient to foreclose disability."); *see also Lucas v. Astrue*, C/A No. 5:10-2606-JMC-KDW, 2012 WL 265712, at *14 (D.S.C. Jan. 23, 2012), *aff'd*, 2012 WL 266480 ("[E]ven if such boilerplate

11

verbiage could suffice to demonstrate the ALJ considered all of Plaintiff's impairments, it does not purport to indicate he considered all impairments in combination."). Nowhere does the ALJ discuss how and whether she considered the combined cumulative effect of these limitations and whether, together, the limitations rendered Plaintiff disabled. *See Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments").

Because the ALJ failed to consider Plaintiff's impairments in combination, the undersigned recommends remand of this case to the ALJ for her specific consideration of Plaintiff's combined impairments. The ALJ should consider the synergistic effect all impairments may have on Plaintiff's ability to work. This must be done in connection with all steps in the sequential evaluation process. By recommending further analysis of Plaintiff's impairments in combination, the undersigned does not suggest that Plaintiff's combined impairments necessitate a finding of disability.

2. Physician Opinions

Plaintiff also argues that the ALJ did not properly evaluate the opinion of state-agency consultant Todd Morton, Ph.D., or the opinions of her treating physicians, Drs. Richard C. Cutchin and Stanley Dover.

a. Dr. Morton

On January 4, 2011, Plaintiff was referred to Dr. Morton by the state agency for a mental status examination related to her alleged depression and anxiety disorder. Tr. at 760. Dr. Morton indicated that Plaintiff "generally moved stiffly and slowly." *Id.* He observed that her speech was slow, but clear and organized. *Id.* He noted that her mood

was neutral to depressed and that she had a flat affect. *Id.* Dr. Morton estimated Plaintiff's intelligence to be in the low average range. *Id.* He noted that Plaintiff reported frequent crying and irritability and that her depression started after her neck surgery. *Id.* Dr. Morton opined that Plaintiff was "experiencing severe symptoms of depression" and that Plaintiff's "depression is a result of her physical limitations." Tr. at 761. He stated that Plaintiff's treatment with psychotropic medications had "limited effectiveness." *Id.* Dr. Morton indicated that he believed that her symptoms of depression "would interfere with her ability to work as she is quite irritable and has very low energy." Tr. at 762. He further stated that "it also appears that her primary impairments to working is her physical health problems." *Id.* Dr. Morton found no indication of significant exaggeration of Plaintiff's symptoms. *Id.* He assessed her with major depression, anxiety disorder, neck problems, back problems, diabetes, and a Global Assessment of Functioning ("GAF")[4] score of 50. *Id.*

At the second administrative hearing, Plaintiff's counsel asked the vocational expert ("VE") whether a hypothetical individual with a GAF score of 50 would be able to perform the jobs identified by the VE. Tr. at 857–58. The VE responded that a person with a GAF score of 50 would not be able to perform any jobs in the national or regional economy. Tr. at 858.

Based on the foregoing record evidence, Plaintiff argues that the ALJ erred by failing to give sufficient reasons for discounting Dr. Morton's opinion. With regard to

---

[4] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 n. 1 (9th Cir. 1999).

the opinion, the ALJ stated: "Under 96-2p, I cannot assign controlling weight to Dr. Morton's opinion that symptoms of depression would interfere with [Plaintiff's] ability to work, as Dr. Morton is not a 'treating source.' I assign little weight to this opinion as [it] is vague and non-specific." Tr. at 51.

Pursuant to SSR 96-6p, findings of fact made by state-agency medical and psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ and the Appeals Council. SSR 96-6p. The ALJ and Appeals Council may not ignore these opinions and must evaluate them in accordance with 20 C.F.R. §§ 404.1527 and 416.927. *Id.* The regulations identify the following factors to be considered in evaluating medical opinion evidence: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, Plaintiff agrees that Dr. Morton was not a treating physician [Entry #17 at 24], but contends that it was insufficient for the ALJ to discount the opinion solely on the grounds that it was vague and non-specific. While the Commissioner argues that the ALJ did not err in assessing Dr. Morton's opinions, the reasons she offers are either not compelling or are post hoc rationalizations. First, she points to the ALJ's statement that Dr. Morton was Plaintiff's only recorded encounter with a mental health provider after the alleged onset date. [Entry #20 at 7]. While this may be true, Plaintiff's limited

mental health records underscore the need for a thorough analysis of the records that do exist. The Commissioner next seems to argue that Dr. Morton's opinion was not supported by his observations during the examination. *Id.* The ALJ did not identify this as a reason for discounting Dr. Morton's opinion; thus, it is an impermissible post hoc rationalization. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Furthermore, Dr. Morton's records identify several abnormal findings such as a depressed mood and a flat affect. Tr. at 760. The Commissioner also notes that Plaintiff conceded she responded positively to medication. [Entry #20 at 7]. This is likewise a post hoc rationalization. Finally, the Commissioner recognizes that Dr. Morton assessed Plaintiff with a GAF score of 50, but argues that a GAF score alone does not establish disabling limitations. *Id.* at 8. In light of the VE's testimony that a person with a GAF score of 50 would be precluded from employment, the undersigned finds this argument unavailing.

Dr. Morton, who was retained by the state agency to evaluate Plaintiff, offered a three-page report including specific findings that Plaintiff had a GAF score of 50 and that her symptoms would interfere with her ability to work. Because the ALJ's only stated reason for discounting the opinion was that it was vague and ambiguous and she failed to consider the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the undersigned recommends a finding that the ALJ's decision to discount Dr. Morton's opinion is not supported by substantial evidence and does not comply with the applicable

15

legal standards. The undersigned further recommends that this matter be remanded to the ALJ for further consideration of Dr. Morton's opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

### b.    Treating Physicians

Plaintiff also challenges the ALJ's treatment of the opinions of Drs. Cutchin and Dover. [Entry #17 at 35–39]. Because the undersigned has recommended remand based on the ALJ's errors in evaluating Plaintiff's combined impairments and Dr. Morton's opinion, Plaintiff's allegations related to her treating physician's opinions are not addressed in detail here. The undersigned notes, however, that the ALJ offered several valid reasons for discounting these opinions. On remand, the undersigned recommends that the ALJ provide specific record citations in the event she decides to discount the opinion of Dr. Cutchin.

## III.   Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

January 8, 2014                             Shiva V. Hodges
Columbia, South Carolina           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).