IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Willie Mae Good,                      ) | |
| ) | |
|     Plaintiff,                          ) | |
| ) | Civil Action No. 1:12-3380-RMG |
| vs.                                         ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,                    ) | **ORDER** |
| ) | |
|     Defendant.                      ) | |
| _____) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 8, 2014, recommending that the Court reverse the decision of the Commissioner. (Dkt. No. 25). The Commissioner filed objections to the Report and Recommendation. (Dkt. No. 30). As more fully set forth below, the Court adopts the Report and Recommendation of the Magistrate Judge, reverses the decision of the Commissioner, and remands for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen,* 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which

exists in significant numbers either in the region where [the claimant] lives or in several regions of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record,

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1)-(2).

## Discussion

The Commissioner has filed objections to the Report and Recommendation, contending that any failure of the Administrative Law Judge ("ALJ") to address the combined effects of Plaintiff's multiple severe impairments was harmless and should not be a basis for reversal. (Dkt. No. 30 at 1-2). The Court agrees with the analysis contained in the Report and Recommendation that the ALJ's cursory boilerplate reference to considering the combined effects of Plaintiff's multiple severe impairments does not remotely meet the standard set in *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). One needs little imagination to realize that the cumulative effects of Plaintiff's diabetes, asthma, degenerative disc disease, fibromyalgia, anxiety, and depression, all which the ALJ found to be severe impairments, may, "taken together, . . . render claimant unable to engage in substantial gainful activity." *Id.* at 50.

The Commissioner further objects to the Magistrate Judge's findings regarding the testimony of an examining consulting expert, Dr. Morton. (Dkt. 30 at 2-3). The Court has reviewed the report prepared by Dr. Morton, which found significant psychological impairments based on an examination of Plaintiff, and the ALJ's analysis affording Dr. Morton's opinions "little weight" because he was not a treating source and his opinions were "vague and non-

-5-

specific." Tr. 51, 760-62. The Court agrees with the Magistrate Judge that the ALJ failed to evaluate Dr. Morton's opinions under the standards of the Treating Physician Rule, 20 C.F.R. § 404.1527(c). (Dkt. No. 25 at 12-16). Most notably, the ALJ discredited Dr. Morton's opinions because he was not a treater but failed to provide any weight to other highly relevant factors under the Treating Physician Rule, such as the fact that Dr. Morton was an examining provider and a specialist. *Id.* § 404.1527(c)(1),(6); Tr. 51.

The Court also shares the Magistrate Judge's concerns regarding the application of the Treating Physician Rule to other treating or examining experts. In reviewing the ALJ's decision, it is not clear to this Court that the opinions of Dr. Cutchin and Dr. Dover were evaluated under the standards of the Treating Physician Rule since the ALJ gave no credit to the fact that these physicians were treating and examining physicians and that Dr. Dover is a specialist. Tr. 49-50. Further, the ALJ gave "great weight" to the opinions of state agency consultants without identifying them by name, referencing their opinions, or evaluating those opinions under the Treating Physician Rule. Tr. 39. It is notable that the providers who treated or examined Plaintiff tended to attribute a greater degree of impairment to her than the state agency chart reviewers, but the ALJ discredited the opinions of the treaters and examiners and gave great weight to the chart reviewers. This essentially turns the Treating Physician Rule on its head, and the ALJ must provide far more justification under the controlling standards for the evaluation of expert opinions before such a result can be sustained. This is particularly true regarding the opinions of Dr. Morton, who was wholly independent of Plaintiff and her counsel and was assigned the task of evaluating Plaintiff by the agency. The dismissal of his opinions, following an examination and a two-and-one-half-page single-space report as "vague and non-specific" is,

to say the least, unimpressive. Tr. 51.

## Conclusion

Based on the foregoing, the Court hereby **ADOPTS** the Report and Recommendation of the Magistrate Judge, **REVERSES** the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and **REMANDS** the matter to the Commissioner for further action consistent with this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

January 31, 2014
Charleston, South Carolina